## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

**ANATOLIE STATI et al.,**

    **Petitioners,**

    **v.**

**STATE STREET CORPORATION,**

    **Respondent.**

---

Civil Action No. _____

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PETITIONERS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>

Kerrie C. Dent
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
Tel: (202) 626-2394
Fax: (202) 626-3737
kdent@kslaw.com

James E. Berger (*pro hac vice* pending)
Thomas C.C. Childs (*pro hac vice* pending)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
tchilds@kslaw.com

*Attorneys for Petitioners Anatolie Stati,*
*Gabriel Stati, Ascom Group, S.A., Terra Raf*
*Trans Traiding Ltd.*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   BACKGROUND .......................................................................................... 2

    A.    The Award and the D.C. Enforcement Proceedings ................................. 2

    B.    The Section 1782 Proceedings........................................................... 3

    C.    The Rule 69 Subpoenas .................................................................. 7

III.  ARGUMENT ............................................................................................. 9

    A.    State Street's Failure to Respond to the Stati Group's Request for a Discovery Conference Warrants Automatic Allowance of the Motion ................. 9

    B.    State Street's Objections to the Rule 69 Document Subpoena Lack Any Merit................................................................................................. 11

        1.    The Requested Documents Are Highly Relevant to Execution on the Judgment ........................................................................ 11

        2.    The FSIA Does Not Provide Any Bar to Discovery, and in Any Event State Street Does Not Have Standing to Object to Discovery Based on the ROK and/or the NBK's Purported Immunity From Discovery ........................................................................ 13

        3.    The Pendency of Certain Other Proceedings Does Not Weigh in Favor of a Stay of Discovery ................................................ 14

            a.    The BNYM Proceedings............................................... 14

            b.    The ROK's Appeal of the Judgment.............................. 15

            c.    The Section 1782 Proceedings.................................... 16

        4.    State Street Waived Its Objection Based on English Banking Privacy Laws, Which in Any Event Do Not Shield the Requested Documents From Disclosure.................................................... 16

        5.    The Document Requests Are Not Overly Broad or Unduly Burdensome ........................................................................ 20

IV.  CONCLUSION........................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Cryovac, Inc.*,
  805 F.2d 1 (1st Cir. 1986)........................................................................20

*Aurelius Capital Master, Ltd. v. Republic of Arg.*,
  589 Fed. App'x 16 (2d Cir. 2014)............................................................12

*Cohen v. City of Newton*,
  248 F.R.D. 92 (D. Mass. 2008)............................................................1, 10

*EM Ltd. v. Republic of Arg.*,
  695 F.3d 201 (2d Cir. 2012), *aff'd sub nom. Republic of Arg. v. NML Capital
  Ltd.*, 573 U.S. 134 (2014).........................................................................14

*Falicia v. Advanced Tenant Servs.*,
  235 F.R.D. 5 (D.D.C. 2006)......................................................................12

*First Am. Corp. v. Price Waterhouse LLP*,
  988 F. Supp. 353 (S.D.N.Y. 1997) .....................................................18, 19

*Laydon v. Mizuho Bank, Ltd.*,
  183 F. Supp. 3d 409 (S.D.N.Y. 2016)................................................18, 19

*Marx v. Kelly, Hart & Hallman, P.C.*,
  929 F.2d 8 (1st Cir. 1991).........................................................................16

*NML Capital v. Republic of Arg.*,
  Case No. 03 Civ. 8845 (TPG), 2013 U.S. Dist. LEXIS 17572 (S.D.N.Y. Feb.
  8, 2013) ...............................................................................................16, 18

*Ocasio-Hernandez v. Fortuño-Burset*,
  640 F.3d 1 (1st Cir. 2011).........................................................................13

*Rapid Pharms. AG v. Kachroo*,
  180 F. Supp. 3d 96 (D. Mass. 2015) .........................................................15

*S.E.C. v. Gib. Glob. Sec., Inc.*,
  Case No. 13 Civ. 2575 (GBD)(JCF), 2015 U.S. Dist. LEXIS 43773 (S.D.N.Y.
  Apr. 1, 2015) .......................................................................................17, 18

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for  S. Dist. of
  Iowa*,
  482 U.S. 522 (1987).................................................................................18

*Torres v. Johnson & Johnson*,
　　Case No. 3:18-10566-MGM, 2018 U.S. Dist. LEXIS 144043 (D. Mass. Aug.
　　24, 2018) ..............................................................................................................................11

*Weiss v. Nat'l Westminster Bank, PLC*,
　　242 F.R.D. 33 (E.D.N.Y. 2007) ...........................................................................................17

**Statutes**

28 U.S.C. § 1782 ............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ...........................................................................................................20

Fed. R. Civ. P. 30(b)(6) .............................................................................................................3

Fed. R. Civ. P. 45 .....................................................................................................................7

Fed. R. Civ. P. 69 ........................................................................................................... *passim*

L.R. 7.1(a)(2) .......................................................................................................................9, 11

L.R. 37.1 ......................................................................................................................... *passim*

L.R. 37.1(a) .................................................................................................................... *passim*

L.R. 37.1(b) ..........................................................................................................................10, 11

Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (collectively, the "Stati Group") respectfully submit this memorandum of law in support of their motion to compel ("Motion to Compel") State Street Corporation ("State Street") to produce documents in accordance with a document subpoena ("Rule 69 Document Subpoena") served on State Street pursuant to Fed. R. Civ. P. ("FRCP") 45 and 69.

## I.   PRELIMINARY STATEMENT

As this Court is aware, State Street has obstructed the Stati Group's efforts to obtain discovery concerning assets of award- and judgment-debtor the Republic of Kazakhstan ("ROK") for almost **two years**.   State Street's conduct has included: making factual misrepresentations to the Court about its custody and control over the requested documents; producing a 30(b)(6) witness who was grossly unprepared; raising arguments and objections that the Court has previously rejected; and repeatedly breaching its obligation under the Court's Local Rules to meet and confer concerning its objections to the requested discovery.   State Street's repeated failure to respond to the Stati Group's requests for a discovery conference concerning its objections to the Rule 69 Document Subpoena fits this pattern of dilatory and obstructive conduct and warrants **automatic** allowance of this Motion to Compel.   *See* L.R. 37.1(a); *Cohen v. City of Newton*, 248 F.R.D. 92, 93 (D. Mass. 2008) (automatically allowing motion to compel production of documents pursuant to L.R. 37.1(a) because of defendants' counsel's failure to respond to plaintiff's counsel's attempts to arrange discovery conference).

State Street also utterly fails to meet its burden of establishing that any of the 17 document requests ("Document Requests") in the Rule 69 Document Subpoena is improper. Most of State Street's objections to the Subpoena are identical to arguments that it recently made in support of its application ("Application") to quash, or for a protective order regarding, a 30(b)(6) deposition subpoena ("Rule 69 Deposition Subpoena") served at the same time as the

1

subpoena at issue herein.  The Court should reject State Street's objections for the reasons set out

in the Stati Group's memorandum of law in opposition to the Application ("Opposition Brief"),

which the Stati Group hereby incorporates by reference.  State Street's only new objection—that

production of the requested documents could "potentially" violate the English common law

"banker's duty of confidentiality"—is devoid of any merit.  First, State Street waived this

objection by failing to raise it during the extensive prior litigation concerning the Stati Group's

requests for the same documents.  Second, production of the documents would not violate

English law, which recognizes two exceptions to the banker's duty of confidentiality that are

applicable here.  Third, even assuming that production of the documents would violate English

law, this Court should still order the production under an international comity analysis.

## II.     BACKGROUND

The Stati Group briefed most of the facts relevant to this dispute in its Opposition Brief,

which it filed in opposition to State Street's Application to quash the Rule 69 Deposition

Subpoena.  *See* Opp'n Br. at 3-11.  The Stati Group hereby incorporates by reference the factual

submissions in the Background section of its Opposition Brief, to which it respectfully refers the

Court.[1]  *See id.*  In the present section, the Stati Group supplements those factual submissions

with additional facts relevant to its Motion to Compel.

### A.     The Award and the D.C. Enforcement Proceedings

On December 19, 2013, a Stockholm-based arbitral tribunal issued an Award ("Award")

requiring the ROK to pay the Stati Group more than $500 million as a result of the ROK's

---

[1]     The Stati Group filed two declarations in support of its Opposition Brief: a Declaration of Thomas C.C. Childs, dated April 4, 2019 ("First Childs Declaration") and a Declaration of Egishe Dzhazoyan, dated April 4, 2019 ("Dzhazoyan Declaration").  Because the present proceeding is technically separate from the related proceeding commenced by State Street, the Stati Group is refiling the First Childs Declaration and the Dzhazoyan Declaration in support of its Motion to Compel.  The First Childs Declaration and the Dzhazoyan Declaration are attached as Exhibits A and B to the Declaration of Thomas C.C. Childs, dated May 16, 2019 ("Second Childs Declaration").

expropriation of the Stati Group's business in Kazakhstan. *See id.* at 3; First Childs Decl. ¶ 2. On March 23, 2018, the U.S. District Court for the District of Columbia ("DC Court") entered judgment ("Judgment") confirming the Award. Opp'n Br. at 3; First Childs Decl. ¶ 5. On April 19, 2019, the U.S. Court of Appeals for the District of Columbia Circuit ("DC Circuit") affirmed the Judgment in a *per curiam* summary order. Second Childs Decl. ¶ 4.

B.    **The Section 1782 Proceedings[2]**

On March 2, 2015, this Court issued an *ex parte* order authorizing the Stati Group to take discovery from State Street pursuant to 28 U.S.C. § 1782 for use in ongoing and contemplated proceedings to enforce the Award in Europe. First Childs Decl. ¶ 26 & Ex. N. On August 3, 2017, the Stati Group served a document subpoena ("1782 Document Subpoena") and a FRCP 30(b)(6) deposition subpoena ("1782 Deposition Subpoena") (together, "1782 Subpoenas") on State Street. Second Childs Decl. ¶ 5. The 1782 Subpoenas sought documents and information concerning the ROK's assets in the United Kingdom and European Union that are managed by State Street. *Id.*

On August 31, 2017, State Street objected to the 1782 Subpoenas and refused to produce any documents or a witness. Second Childs Decl. ¶ 6 & Ex. D. While State Street listed 12 separate objections to the 1782 Subpoenas, it did **not** object to the Subpoenas on the ground that production of the requested documents would violate English banking privacy laws, nor did it make any reference to principles of international comity. *Id.*

On November 6, 2017, following an unsuccessful attempt to meet and confer with State Street, the Stati Group moved to compel compliance with the 1782 Subpoenas (the "Initial

---

[2]    The Stati Group's Opposition Brief contains a detailed discussion of the § 1782 proceedings. *See* Opp'n Br. at 6-9. This subsection repeats much of that discussion, supplementing it with additional facts relevant to the present Motion to Compel.

Motion to Compel").[3]  First Childs Decl. ¶ 29.  The National Bank of Kazakhstan ("NBK"), which was represented by the same counsel as State Street, moved to intervene, and both State Street and the NBK cross-moved to vacate the Court's § 1782 order or, in the alternative, to stay the § 1782 discovery.  *Id.* & Ex. O.  In support of their cross-motion to vacate, State Street and the NBK falsely asserted, as a matter of fact, that all of the documents responsive to the 1782 Document Subpoena are "in the UK and only in the UK"; they also argued, as a matter of law, that those documents were not discoverable because § 1782 does not permit discovery of documents located outside the United States.  *Id.* ¶¶ 29-30 & Ex. O at 12-15.

State Street and the NBK also opposed the Stati Group's Initial Motion to Compel. Second Childs Decl. ¶ 8 & Ex. F.  However, State Street and the NBK did **not** argue—either in support of their cross-motion to vacate or in opposition to the Stati Group's Initial Motion to Compel—that production of the requested documents would violate English banking privacy laws, nor did they make any reference to principles of international comity.  *Id*. ¶ 8 & Ex. F.

On January 18, 2018, this Court entered an order (1) granting the NBK's motion to intervene, (2) granting the Stati Group's motion to compel the 1782 Deposition Subpoena, (3) denying State Street and the NBK's cross-motion to vacate the 1782 Deposition Subpoena, and (4) denying State Street and the NBK's request for a stay of the § 1782 discovery.  First Childs Decl. ¶ 31 & Ex. Q.  The Court also denied without prejudice the Stati Group's motion to compel the 1782 Document Subpoena, finding that it was not established whether Boston-based State Street employees had possession, custody, or control of the documents sought by the 1782

---

[3]     On September 11, 2017, the Stati Group responded to State Street's objections to the 1782 Subpoenas and invited it to meet and confer in an attempt to overcome them.  *See* First Childs Decl. ¶ 28.  Following a period of non-responsiveness by State Street, the Stati Group sent State Street a formal request to meet and confer as a prerequisite to filing a motion to compel the 1782 Subpoenas.  State Street cancelled, at the last minute, two meet and confer discussions, and as a result did not meet and confer within 14 days of the Stati Group's request to meet and confer.  *Id.*  As a result, the Stati Group, consistent with L.R. 37.1, filed its Initial Motion to Compel.  *Id*. ¶ 29.  This Court found that the Stati Group had complied with its obligations under L.R. 37.1.  *See* First Childs Decl. ¶ 31 & Ex. Q at 18.

Document Subpoena.[4]  *Id.* ¶ 31 & Ex. Q at 16-17.  Based on this finding, the Court expressly authorized the Stati Group to amend the 1782 Deposition Subpoena to include a topic of inquiry concerning this issue.  *Id.* ¶ 31 & Ex. Q at 17 n.11.  On February 14, 2018, Judge Leo Sorokin overruled the NBK's objections to the order.  *Id.* ¶ 31.

On March 5, 2018, the Stati Group conducted the deposition of State Street, which designated Nathaniel Evarts, a managing director of State Street Global Advisors, Inc. based in State Street's Boston office, to testify on its behalf.  *Id.* ¶ 32.  Mr. Evarts was grossly unprepared and could not answer more than two dozen questions during his deposition.  *See id.*

On March 16, 2018, the NBK appealed this Court's February 14, 2018 order to the U.S. Court of Appeals for the First Circuit ("First Circuit").  *Id.* ¶ 33.  The appeal sought a ruling that this Court lacked authority under § 1782 to compel the production of documents that were not held in the United States.  *Id.*  The First Circuit, by order dated November 7, 2018, dismissed the appeal for lack of appellate jurisdiction, on the ground that this Court had not compelled the production of any documents.  *Id.*

On April 25, 2018, the Stati Group filed a renewed motion to compel State Street to produce documents responsive to the 1782 Document Subpoena ("Renewed Motion to

---

[4]     The Court's finding in this regard was solely attributable to a failure by State Street's counsel to acknowledge what it eventually admitted—that State Street personnel in Boston have possession, custody, and control of documents responsive to the 1782 Document Subpoena.  Specifically, during a hearing on the motion to compel the 1782 Subpoenas, Judge Bowler asked State Street's counsel whether Boston-based personnel could access the documents electronically.  Counsel avoided the question, stating "[w]ell, electronic documents can be accessed from different people."  First Childs Decl. ¶ 30 & Ex. P at 27:7-13.  However, State Street's 30(b)(6) witness Nathaniel Evarts subsequently testified that Boston-based senior executives of the entities which State Street claimed were responsible for the bank's relationship with the NBK had on-demand access to those entities' documents.  *Id.* ¶ 24.  Further, State Street's counsel later conceded—in direct contradiction to its counsel's prior statements to the Court—that some of the documents are actually maintained in Boston.  *See* First Childs Decl. ¶ 34.  State Street's lack of candor on both of these issues caused the Stati Group and the Court to devote considerable time and resources to establish and litigate matters that ought not to have been in dispute.  While the Stati Group has, as evidenced by its recent request to withdraw the declaration of § 1782 Proceeding, decided not to seek sanctions for State Street's and the NBK's misconduct, the Stati Group respectfully submits that that conduct was plainly sanctionable pursuant to Rule 37 and 28 U.S.C. § 1927.

Compel"). *Id.* ¶ 34; Second Childs Decl. ¶ 9. In their opposition and cross-motion for a stay or protective order ("Cross-Motion"), State Street and the NBK acknowledged—for the first time— that "State Street has custody and control over the [requested] documents." First Childs Decl. ¶ 34 & Ex. S at 7. State Street and the NBK further acknowledged that not all of "the documents sought by the Statis are maintained by State Street's subsidiaries in London," *id.* ¶ 34 & Ex. S at 2, a stunning admission that was directly contrary to their prior averment to this Court that the responsive documents are "in the UK and only in the UK."

Despite acknowledging these facts, State Street and the NBK opposed the Renewed Motion to Compel and cross-moved based on arguments that had been briefed and decided on the Initial Motion to Compel. *Id.* ¶ 34. The NBK, **but not State Street**, also argued that production of the requested documents would "likely" violate English banking privacy laws and that principles of international comity required this Court not to order the production in violation of English law. Second Childs Decl. ¶ 9 & Ex. G at 16-17. Neither State Street nor the NBK had ever raised this argument before. *Id.* ¶ 9. In its opposition to the Cross-Motion, the Stati Group argued that the NBK had waived the argument by failing to raise it during the litigation of the Initial Motion to Compel. *Id.* ¶ 9 & Ex. H at 19-20.

After the Renewed Motion to Compel and the Cross-Motion were filed, State Street made two partial document productions consisting of a total of 1,918 pages. *Id.* ¶ 10. The Stati Group has not, however, been provided with any indication of what proportion of responsive documents these productions represent, or if State Street is withholding any additional responsive documents, and if so, on what grounds. *Id.*

On June 15, 2018, this Court issued a docketing notice discontinuing the scheduled hearing on the Renewed Motion to Compel and Cross-Motion "in light of" the NBK's notice of

appeal from this Court's February 14, 2018 order. Second Childs Decl. ¶ 11 & Ex. C at 14. Counsel for State Street thereafter went silent with respect to State Street's previously stated intention to continue producing documents responsive to the 1782 Document Subpoena. *Id.* ¶ 11. After the Stati Group inquired whether State Street still intended to produce the documents it had previously identified as responsive, counsel for State Street noted his opinion that the matter had been effectively stayed, and offered to produce an additional subset of responsive documents only on the condition that the Stati Group agree to a term of State Street's draft protective order that the Stati Group had long objected to as unacceptable. *Id*.

### C.     The Rule 69 Subpoenas[5]

On February 13, 2019, the Stati Group served two new subpoenas on State Street pursuant to FRCP 45 and 69: the Rule 69 Document Subpoena at issue herein and the Rule 69 Deposition Subpoena at issue in the related proceeding commenced by State Street (together, "Rule 69 Subpoenas"). First Childs Decl. ¶ 36 & Exs. T and U. The Rule 69 Subpoenas are similar to the 1782 Subpoenas, but include an express requirement that State Street disclose information concerning assets located in the United States. *Id.* ¶ 36. The Rule 69 Document Subpoena contains 17 Document Requests that seek documents concerning, *inter alia*, (1) State Street's management role with respect to the National Fund and (2) accounts maintained by State Street in the name of the NBK. Second Childs Decl. ¶ 13.

The Stati Group elected to serve the Rule 69 Subpoenas rather than prosecute the 1782 Subpoenas because the DC Court's entry of the Judgment on March 23, 2018 authorized the Stati Group to seek plenary post-judgment discovery in aid of execution on the Judgment. *See* First Childs Decl. ¶ 37 & Ex. V. Such discovery is not subject to the principal objection interposed by

---

[5]     This subsection repeats much of the discussion of the Rule 69 Subpoenas in the Stati Group's Opposition Brief, *see* Opp'n Br. at 9-11, supplementing it with additional facts relevant to the present Motion to Compel.

State Street and the NBK in response to the 1782 Subpoenas—namely, that this Court lacks the power under § 1782 to order the production of documents located outside the United States. *See id*. The Stati Group informed State Street's counsel of this rationale and sought a discussion with State Street to attempt to find an agreeable scope of discovery. *Id.*

State Street did not agree to discuss the Rule 69 Subpoenas. Its first response, contained in an email dated March 1, 2019, was to request additional time to respond to the Subpoenas. *Id.* ¶ 38 & Ex. V. The Stati Group agreed to that request. *Id.*

On March 15, 2019, State Street timely served responses and objections to the Rule 69 Document Subpoena (the "Objections"). Second Childs Decl. ¶ 14 & Ex. J. State Street refused to produce **any** documents responsive to the Subpoena, asserting 12 "general objections" and then essentially repeating the same objections as "specific objections" to each of the Document Requests. *Id.* State Street objected on the following seven main grounds:

- that discovery from State Street should be stayed given the pendency of (1) the BNYM Proceedings, (2) the ROK's appeal of the Judgment, and (3) the § 1782 proceedings;

- (4) that the requested documents are protected from disclosure by the English common law "banker's duty of confidentiality";

- (5) that documents concerning the assets of the NBK are "not relevant to the execution of [the Stati Group's] judgment against the ROK" because the NBK is a "separate entity from the ROK" and (6) because the NBK's assets are immune from execution under the FSIA; and

- (7) that the burden and expense of complying with the Subpoena would "outweigh the likely benefit of receiving the requested materials." *Id.*

By email dated March 19, 2019, the Stati Group informed State Street that it did not believe that the Objections justified a complete refusal to produce any documents and that it was "willing to meet and confer with you in an attempt to overcome your objections." *Id.* ¶ 15 & Ex. K. "To that end," the Stati Group "request[ed], pursuant to L.R. 37.1(a) of the Local Rules of

[this Court], a telephonic conference for purposes of attempting to narrow and/or resolve our dispute with respect to the document subpoena." *Id*. The Stati Group also specifically asked State Street to "let us know if you are willing to attend such a conference and, if so, the dates upon which you are available." *Id*. State Street never responded to that request. *Id*. ¶ 15.

On March 21, 2019, State Street filed its Application to quash, or for a protective order regarding, the Rule 69 Deposition Subpoena. First Childs Decl. ¶ 41. On April 4, 2019, the Stati Group filed its Opposition Brief and the two supporting declarations referred to above. In its Opposition Brief, the Stati Group argued, *inter alia*, that the Court should summarily deny the Application because State Street had flagrantly breached its obligation under Local Rule 37.1 to meet and confer with the Stati Group before filing the Application. *See* Opp'n Br. at 11-13.

On May 3, 2019, the Stati Group sent a second request for a discovery conference regarding State Street's objections to the Rule 69 Document Subpoena, reiterating its "offer to discuss either of the pending subpoenas with an eye toward lessening the burden of compliance on State Street." Second Childs Decl. ¶ 16 & Ex. L. To date, State Street has not responded to this request. *Id.* ¶ 16.

## III.   ARGUMENT

### A.   State Street's Failure to Respond to the Stati Group's Request for a Discovery Conference Warrants Automatic Allowance of the Motion

Local Rule 37.1(a) obligates "counsel for each of the parties," in the event of a discovery dispute, to "confer in good faith to narrow the areas of disagreement to the greatest possible extent." L.R. 37.1(a). *See also* L.R. 7.1(a)(2). It requires counsel for the moving party "to arrange for the conference" and provides that "[f]ailure of opposing counsel to respond to a request for a discovery conference within 7 days of the request shall be grounds for sanctions,

**which may include automatic allowance of the motion**."  L.R. 37.1(a) (emphasis added).[6]  *See*

*Cohen*, 248 F.R.D. at 93.

As explained above, on March 19, 2019 and again on May 3, 2019, the Stati Group requested a discovery conference with State Street for purposes of attempting to narrow or resolve the parties' dispute with respect to the Rule 69 Document Subpoena.  Second Childs Decl. ¶¶ 14-16 & Exs. K and L.  To date, State Street has not responded to these requests.  *Id.*  State Street's failure to respond constitutes a flagrant breach of its obligation under Local Rule 37.1(a) to confer with the Stati Group concerning the Objections and is grounds for sanctions, "which may include automatic allowance of the motion."

Automatic allowance of the present Motion to Compel is an appropriate sanction for State Street's breach of its obligations under Local Rule 37.1(a), because that breach forms part of a pattern of dilatory and obstructive discovery tactics on the part of State Street stretching back almost two years.  As explained above, the Stati Group served the 1782 Subpoenas on August 3, 2017.   State Street failed to meet and confer with counsel for the Stati Group concerning its objections to those Subpoenas, prompting the Stati Group to file its Initial Motion to Compel.[7]   In its opposition to that motion, State Street falsely asserted that all of the documents responsive to the 1782 Document Subpoena were located in the United Kingdom, and it refused to acknowledge that its Boston-based personnel had possession, custody or control of the documents.  As a result, the Stati Group and this Court had to devote considerable time and

---

[6]     Local Rule 37.1(b) provides that a party may file a discovery motion if one of the following three alternative conditions is satisfied: "(1) opposing counsel has failed to respond to a request for a discovery conference within the 7 day period set forth in subsection (a), (2) opposing counsel has failed to attend a discovery conference within 14 calendar days of the request, or (3) disputed issues are not resolved at the discovery conference."   The Stati Group is authorized to file the present Motion to Compel because conditions (1) and (2) under Local Rule 37.1(b) are both satisfied.

[7]     State Street opposed the Initial Motion to Compel on the ground, *inter alia*, that it was the Stati Group (not State Street) that had failed to meet and confer in accordance with L.R. 37.1.  Second Childs Decl. Ex. F at 4-8.  This Court rejected State Street's argument.  *See* First Childs Decl. ¶ 31 & Ex. Q at 18.

resources to establish matters that ought not to have been in dispute.  State Street changed its position on both issues only after the Stati Group filed its Renewed Motion to Compel.

State Street's pattern of dilatory and obstructive conduct has continued since the Stati Group served the Rule 69 Subpoenas.  As explained above, State Street refused to produce **any** documents or a 30(b)(6) witness in response to the Rule 69 Subpoenas.  Moreover, it recently committed another breach of Local Rule 37.1 by failing to meet and confer before filing its Application to quash the Rule 69 Deposition Subpoena.  State Street also falsely certified in that Application that it had "complied in good faith" with Local Rules 7.1(a)(2) and 37.1(b).

As a result of State Street's bad faith approach to its discovery obligations, the Stati Group now has no other option than to bring a **third** motion to compel State Street's production of documents.  The Court should sanction State Street's most recent breach of Local Rule 37.1(a) by summarily allowing the present Motion to Compel.

**B.      State Street's Objections to the Rule 69 Document Subpoena Lack Any Merit**

A party moving to compel discovery responses over an opponent's objections bears the initial burden of showing that the requested discovery is relevant.  *See, e.g.*, *Torres v. Johnson & Johnson*, Case No. 3:18-10566-MGM, 2018 U.S. Dist. LEXIS 144043, at *5 (D. Mass. Aug. 24, 2018).  Once a showing of relevance has been made, the objecting party bears the burden of establishing that a discovery request is improper.  *Id.*  Here, the requested documents are highly relevant to the Stati Group's execution on the Judgment, while State Street fails to meet its burden of establishing that any of the Document Requests is improper.

**1.      The Requested Documents Are Highly Relevant to Execution on the Judgment**

State Street objects to the Rule 69 Document Subpoena "to the extent that it seeks the production of documents that are not relevant to the execution of Petitioners' judgment against

the ROK."  Objections at 5 (General Objection V(A)).  In particular, it objects that documents concerning the assets of the NBK are not relevant because the NBK is a "separate entity from the ROK."  *Id.* at 6 (General Objection V(B)).  It also objects to requests for documents concerning assets of the ROK, the National Fund and the NIC on the ground that it "provides services only to the [NBK]" and "does not hold any assets for or on behalf of" the ROK, the National Fund or the NIC.  *Id.* at 7 (General Objections V(C), V(D)).  None of these objections has any merit.

As the Stati Group explained in its Opposition Brief, its enforcement efforts have focused on assets believed to form part of the ROK's National Fund, an unincorporated agglomeration of sovereign assets held by the NBK as custodian or trustee for the ROK.  *See* Opp'n Br. at 5-6, 18-19.  According to documents published by the NBK, State Street serves, or previously served, as a manager for National Fund assets.  First Childs Decl. ¶ 21 & Exs. D, I, J, K.  This information suggests that the NBK assets managed by State Street are held by the NBK as a custodian or trustee for the ROK.  Information concerning those assets is thus clearly relevant to the Stati Group's efforts to enforce the Judgment, whether or not the NBK is a separate entity from the ROK.  *See, e.g.*, *Aurelius Capital Master, Ltd. v. Republic of Arg.*, 589 Fed. App'x 16, 18 (2d Cir. 2014) (allowing discovery concerning Argentinian entities that were legally separate from Argentina because they "may nevertheless hold attachable assets on behalf of Argentina"); *Falicia v. Advanced Tenant Servs.*, 235 F.R.D. 5, 7-8 (D.D.C. 2006) ("While judgment creditors cannot typically compel disclosure of assets of non-parties, discovery is permissible when the parties are closely related and reasonable doubts have been raised concerning the good faith of the transfer of assets between the two.") (internal citations and quotation marks omitted).

State Street's conclusory statement that it "does not hold any assets for or on behalf of" the ROK, the National Fund or the NIC, *see* Objections at 7, is not entitled to any weight.

Although presented as a factual assertion, this statement simply describes the legal conclusion that State Street would like this Court to reach concerning the ownership of the assets it holds in the name of the NBK. *Cf. Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 10 (1st Cir. 2011) (court should not give any weight to plaintiff's "conclusory statement that, though presented as an assertion of fact, simply describes [a] legal conclusion"). Because publicly-available information suggests that the assets held by State Street in the name of the NBK are legally and/or beneficially owned by the ROK, discovery concerning those assets is clearly appropriate.

### 2. The FSIA Does Not Provide Any Bar to Discovery, and in Any Event State Street Does Not Have Standing to Object to Discovery Based on the ROK and/or the NBK's Purported Immunity From Discovery

State Street objects to the Rule 69 Document Subpoena "to the extent that it seeks the production of documents that are not relevant to the execution of Petitioners' judgment against the ROK, nor reasonably calculated to lead to the discovery of relevant evidence in light of the [FSIA]." Objections at 7 (General Objection VI(A)). It also objects to discovery concerning assets of the NBK on the ground that that the NBK, as a foreign central bank, is entitled to "special protections" under the FSIA. *Id.* at 8 (General Objection VI(B)).

The FSIA does not pose any obstacle to the discovery at issue here. First, it is well-settled that the FSIA does not bar, or otherwise restrict, the normal rules of post-judgment discovery. *See EM Ltd. v. Republic of Arg.*, 695 F.3d 201, 209 (2d Cir. 2012), *aff'd sub nom. Republic of Arg. v. NML Capital Ltd.*, 573 U.S. 134 (2014) ("Whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery."). Second, the Supreme Court expressly held in *NML Capital* that while the FSIA confers a "more robust execution immunity" on property of a foreign central bank, it contains "[n]o [immunity-granting] provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." *NML Capital*,

573 U.S. at 142.  Third, even assuming that the NBK and/or the ROK had a colorable claim of immunity from discovery (which they do not), State Street would not have standing to object to discovery based on that claim.  *See, e.g.*, *EM Ltd.*, 695 F.3d at 210 (discovery requests directed at non-immune banks could not infringe on Argentina's sovereign immunity).

Finally, State Street's claim that the documents requested in the Rule 69 Document Subpoena are "irrelevant" because the assets held by State Street are immune from execution under the FSIA is precisely the type of "self-serving legal assertion" that the Supreme Court rejected in *NML Capital*.  *See id.* at 144-45 (rejecting Argentina's argument that judgment creditor could not pursue discovery concerning property that Argentina claimed was immune from execution).  State Street, the NBK, and/or the ROK may claim that the assets held by State Street are immune from execution under the FSIA.  However, without any discovery concerning those assets, it will be impossible for any court to decide the matter.  *See id.* at 145.

### 3.   The Pendency of Certain Other Proceedings Does Not Weigh in Favor of a Stay of Discovery

State Street's principal objection to the Rule 69 Document Subpoena is that "discovery from non-party State Street should be stayed pending the resolution" of three other proceedings: (1) the BNYM Proceedings, (2) the ROK's appeal of the Judgment, and (3) the § 1782 proceedings.  *See* Objections at 1-4 (General Objections I, II, III).  This objection lacks merit.

#### a.   The BNYM Proceedings

As regards the BNYM Proceedings, State Street contends that: (1) Petitioners "have already attached approximately $530 million of assets to satisfy their Award," and the validity of that attachment is being litigated in the BNYM Proceedings; (2) the BNYM Proceedings "involve whether Petitioners can attach the NBK's assets to satisfy the Award against the ROK"; and (3) a stay of discovery is required "to prevent waste of judicial and party resources and to

grant appropriate comity to the [London] Court." Objections at 2.

As the Stati Group explained in its Opposition Brief, the BNYM Proceedings have no bearing on its entitlement to discovery from State Street in the United States. *See* Opp'n Br. at 13-15. **First**, contrary to State Street's suggestion, the Award is not secured by the Stati Group's attachment of the BNYM assets, because the ROK and the NBK are vigorously contesting that attachment both in the BNYM Proceedings and in proceedings before the Belgian courts (which authorized the attachment). *See* First Childs Decl. ¶ 15 & Ex. A at 4-5. **Second**, the BNYM Proceedings relate solely to assets held by BNYM; the Stati Group has not attached any assets held or managed by State Street, which is not a party to the BNYM Proceedings. *See* Dzazhoyan Decl. ¶¶ 7, 10(c), 12(b). Accordingly, any decision in the BNYM Proceedings concerning the ROK's ownership of the BNYM assets would not and could not preclude the Stati Group from attaching and executing on different assets that may be held or managed by State Street. **Third**, the ROK and the NBK did not even commence the BNYM Proceedings until May 28, 2018, more than two months **after** the Judgment in aid of which the Stati Group served the discovery at issue herein. *Id*. ¶ 7. These circumstances make a nonsense of State Street's claim that discovery should be stayed to grant "appropriate comity" to the London Court. *See, e.g.*, *Rapid Pharms. AG v. Kachroo*, 180 F. Supp. 3d 96, 100-01 (D. Mass. 2015) (holding that abstention or stay is appropriate only in "extraordinary" circumstances and denying defendants' motion to stay proceedings during pendency of Swiss action because, *inter alia*, two cases were not "parallel," even though they involved similar parties and issues, and defendants did not initiate requests for relief in Swiss action until two months after plaintiff commenced U.S. case).

### b.    The ROK's Appeal of the Judgment

State Street's objection based on the pendency of the ROK's appeal of the Judgment is now moot. As explained above, the DC Circuit affirmed the Judgment on April 19, 2019.

### c.     The Section 1782 Proceedings

State Street's claim that discovery should be stayed based on the pendency of the § 1782 proceedings is disingenuous.  *See* Opp'n Br. at 15-16.  On February 13, 2019, the Stati Group informed State Street that it elected to serve the Rule 69 Subpoenas rather than move yet again to compel compliance with the 1782 Subpoenas because post-judgment discovery pursuant to FRCP 69 would not be subject to the principal objection interposed by State Street and the NBK to the § 1782 discovery.  First Childs Decl. ¶ 37 & Ex. V.  On May 14, 2019, the Stati Group formally notified the Court of its withdrawal of the § 1782 proceedings.  Second Childs Decl. ¶ 12.  Accordingly, they cannot provide a basis for a stay of discovery.

### 4.     State Street Waived Its Objection Based on English Banking Privacy Laws, Which in Any Event Do Not Shield the Requested Documents From Disclosure

State Street objects to the Rule 69 Document Subpoena "to the extent it purports to require the production of documents protected by English banking privacy laws."  Objections at 4.  In support of this objection, State Street contends that the documents requested in the Subpoena "were generated in connection with services provided by [its] subsidiaries in London" and that production of these documents "could potentially violate the English common law 'banker's duty of confidentiality'" established by the English Court of Appeal in *Tournier v. National Bank*, [1924] 1 KB 461 (CA).  Objections at 5.

State Street waived its objection based on English banking privacy laws by failing to raise it during the extensive prior litigation concerning the Stati Group's requests for the same documents.  *See, e.g.*, *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections."); *NML Capital v. Republic of Arg.*, Case No. 03 Civ. 8845 (TPG), 2013 U.S. Dist. LEXIS 17572, at *28 (S.D.N.Y. Feb. 8, 2013)

(third-party bank that did not oppose motion to compel based on foreign law "failed to give reasonable notice that it planned on raising foreign law as a basis for not complying with the subpoena").   Notably, State Street did **not** object to the 1782 Subpoenas on the basis of its purported duty of confidentiality under English law, **nor** did it oppose the Initial Motion to Compel or the Renewed Motion to Compel on this basis.   Second Childs Decl. ¶¶ 6, 8, 9. Indeed, not even the NBK—the nominal owner of the accounts managed by State Street and an intervenor in the § 1782 proceedings—opposed the Initial Motion to Compel based on State Street's purported duty of confidentiality under English law.   The Court should therefore deem State Street to have waived its objection based on English banking privacy laws.

In any event, English banking privacy laws do not shield the requested documents from disclosure, for three reasons.   **First**, English law recognizes an exception to the banker's duty of confidentiality where the customer expressly or impliedly consents to disclosure.   *See Tournier*, [1924] 1 KB 461; *S.E.C. v. Gib. Glob. Sec., Inc.*, Case No. 13 Civ. 2575 (GBD)(JCF), 2015 U.S. Dist. LEXIS 43773, at *7-*8 (S.D.N.Y. Apr. 1, 2015).   Here, the NBK (State Street's customer) impliedly consented to disclosure under English law both (1) by publishing documents stating that State Street serves as a manager for National Fund assets and (2) by failing to oppose the Initial Motion to Compel based on the banker's duty of confidentiality.   *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 54 (E.D.N.Y. 2007) (customer impliedly consented to disclosure under English law where, "instead of taking steps to preserve any confidential relationship with NatWest and protect from disclosure its account number . . . [it] has publicized its . . . connections to and account with NatWest").

**Second**, English law recognizes another exception to the banker's duty of confidentiality where disclosure is under compulsion of law.   *See Tournier*, [1924] 1 KB 461; *First Am. Corp. v.*

*Price Waterhouse LLP*, 988 F. Supp. 353, 365 (S.D.N.Y. 1997).   An order from this Court compelling State Street to produce the requested documents would constitute compulsion of law insulating State Street from liability under English law.   *See, e.g.*, *Gib. Glob. Sec.*, 2015 U.S. Dist. LEXIS 43773, at *8 ("[A]n order from this court constitutes legal compulsion that would insulate [the objecting party] from liability.").

**Third**, even assuming that production of the requested documents would violate the banker's duty of confidentiality under English law, this Court should still order the production under an international comity analysis.   The five main factors in that analysis are: (1) the importance to the litigation of the information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the relative interests of the United States and the foreign nation.   *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987).   Courts also often consider two other factors: (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery.   *See, e.g.*, *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 422-23 (S.D.N.Y. 2016).   "The fifth factor—the balancing of national interests—is the most important, as it directly addresses the relations between sovereign nations."   *Gib. Glob. Sec.*, 2015 U.S. Dist. LEXIS 43773, at *11 (internal citation and quotation marks omitted).

Here, the fifth factor in the comity analysis clearly weighs in favor of ordering production of the requested documents, because the United States' interest in the enforcement of its courts' judgments is much stronger than England's interest in protecting the confidentiality of a recalcitrant judgment debtor's bank account information.   *See, e.g.*, *NML Capital*, 2013 U.S. Dist. LEXIS 17572, at *46 ("The United States has a vital interest in . . . the enforcement of its

judgments."); *First Am. Corp.*, 988 F. Supp. at 364-65 ("The existence of qualifications [under English banking privacy laws] raises the inference that the national interest in these confidentiality laws is more flexible than absolute."). Moreover, England's interest in protecting the confidentiality of the requested information can be safeguarded by this Court's issuance of a protective order. *See Laydon*, 183 F. Supp. 3d at 425.

The first and seventh factors also weigh strongly in favor of ordering discovery. As already discussed, the requested documents are highly relevant to the Stati Group's execution of the Judgment, and State Street has engaged in a pattern of dilatory and obstructive discovery tactics. So, too, does the sixth factor: the Stati Group is not aware of any instance where a financial institution was penalized or found liable by an English court for producing confidential customer information pursuant to a U.S. court order. *See id.* The second factor also weighs in favor of ordering discovery: the Document Requests seek specific categories of documents concerning assets owned by the ROK. Moreover, to the extent State Street considers that the Document Requests lack specificity, it should have responded to the Stati Group's request for a discovery conference "for purposes of attempting to narrow and/or resolve our dispute with respect to the document subpoena."

Only the third factor favors State Street, because many of the requested documents appear to have originated in England (although State Street has belatedly conceded that some of them are located in the United States and Mr. Evarts testified that his Boston-based trading desk retained documentation relating to trades it executed on behalf of the NBK, *see* First Childs Decl., Ex. M at 40:12-43:16). Tellingly, however, the court in *Laydon*—the one U.S. case cited by State Street in support of its objection based on English banking privacy laws—ordered production after finding that the only factor favoring the objecting banks was that "much, if not

19

all, of the requested information" originated in England.  *Id.* at 421, 427.

### 5. The Document Requests Are Not Overly Broad or Unduly Burdensome

State Street objects to the Rule 69 Document Subpoena on the ground that it is overly broad and unduly burdensome.  Objections at 8-10 (General Objection VII).  This objection is meritless.  State Street has not even attempted to show how the discovery sought would impose any specific significant burden, nor has it been willing to discuss narrowing it.  Moreover, as State Street reluctantly conceded after the April 30, 2019 hearing before this Court on its Application to quash the Deposition Subpoena, the NBK is indemnifying State Street for its legal costs in the § 1782 proceedings and in these post-judgment proceedings under FRCP 69.  Second Childs Decl. ¶ 17 & Ex. M at 9:8-17.  State Street having failed to establish **any** financial burden or to discuss ways to narrow the Rule 69 Document Subpoena, its generalized overbreadth objection must be rejected.  *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause [justifying a discovery protective order] must be based on a particular factual demonstration of potential harm, not on conclusory statements.").

It is elementary that relevant discovery should be curtailed only if "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  In making that assessment, courts take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources [and] the importance of the discovery in resolving the issues."  *Id.*  The Stati Group's need for the requested discovery is manifest.  It holds a $500 million judgment against the ROK that the ROK has refused to satisfy voluntarily.  State Street manages at least $900 million of assets that the Stati Group believes, on the basis of publicly-available information, are legally and/or beneficially owned by the ROK.

## IV.	CONCLUSION

WHEREFORE, Petitioners respectfully request that the Court enter an order compelling

State Street to comply with the Rule 69 Document Subpoena.  A proposed order is attached.

Dated:  Washington, D.C.
        May 17, 2019

Respectfully submitted,

  /s/ Kerrie C. Dent

Kerrie C. Dent
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C.  20006-4707
Tel:  (202) 626-2394
Fax:  (202) 626-3737
kdent@kslaw.com

James E. Berger (*pro hac vice* pending)
Thomas C.C. Childs (*pro hac vice* pending)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
tchilds@kslaw.com

*Attorneys for Petitioners*